UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
-----------------------------------------------------------------x
:
WAGUIH SIAG, INDIVIDUALLY :
AND AS REPRESENTATIVE OF :
TOURISTIC INVESTMENT & HOTELS :
MANAGEMENT COMPANY (SIAG), :
and SIAG-TABA COMPANY, :   Civil Action No. 4:10-cv-367
:
Plaintiffs, :
:
-against- :
:
KING & SPALDING, LLP, AND :
REGINALD R. SMITH, :
:
Defendants. :
-----------------------------------------------------------------x

MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

DOHERTY ☐ WAGNER
Brett Wagner – SBN: 20654270
Southern District I.D. No. 59875
13810 Champion Forest Drive, Suite 225
Houston, Texas 77069
Tel.: (281) 583-8700
Fax: (281) 583-8701

| | |
|---|---|
| MARK W. LONG & ASSOCIATES | MISHCON DE REYA NEW YORK LLP |
| Mark W. Long – SBN: 12521950 | James J. McGuire |
| Southern District I.D. No. 8816 | (admitted *pro hac vice*) |
| Of Counsel | The MetLife Building |
| 101 West 6th Street, Suite 720 | 200 Park Avenue, 44th Fl |
| Austin, Texas 78701 | New York, New York 10166 |
| Tel.: (512) 329-5005 | Tel.: (212) 612-3265 |
| Fax: (512) 322-2096 | Fax: (212) 612-3297 |

Attorneys for Plaintiffs
*Waguih Siag, individually and as representative of
Touristic Investment and Hotels Management Company
and SIAG-TABA Company*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................................... 2

ARGUMENT .................................................................................................................................. 6

I. PLAINTIFFS ARE ENTITLED TO A TRO AND PRELIMINARY INJUCTION ........................ 6

   A. The Standars for Assessing the Likelihood of Success
      are the Same Under the TAA or Convention/FAA .................................................. 7

   B. Movants Have Demonstrated a Likelihood of Success on the Merits ..................................... 8

      1. LCIA Arbitrator Steven Gee Exceeded His Powers ...................................................... 8

      2. Mr. Gee Unreasonably Refused to Postpone
         the Hearing Despite a Showing of Sufficient Cause ................................................... 10

      3. Mr. Gee Demonstrated Evident Partiality .................................................................. 10

      4. There is No Valid Agreement to Arbitrate................................................................. 11

   C. Plaintiffs Have Sufficiently Demonstrated
      Irreparable Harm At This Stage Of The Proceedings.............................................. 11

   D. Defendants Will Suffer No Harm If The TRO Is Granted....................................... 14

   E. Granting the Request Relief Will Not Disserve the Public Interest....................................... 14

CONCLUSION............................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

21 Turtle Creek Sq., Ltd. v. New York State Teachers' Retirement Sys.,
   425 F.2d 1366 (5th Cir.) .................................................................................................. 9

Casarez v. Val Verde County,
   957 F.Supp. 847 (W.D.Tex. 1997) .................................................................................. 6

City of Meridian v. Algernon Blair, Inc.,
   721 F.2d 525 (5th Cir. 1983) ........................................................................................... 6

Dunn v. H.K. Porter Co., Inc.,
   602 F.2d 1105 (3d Cir. 1979) .......................................................................................... 5

Houston Pipe Line Co. v. O'Connor & Hewitt, Ltd.,
   269 S.W.3d 90 (Tex. App. 2008) ............................................................................. 6, 12

IAC, Ltd. v. Bell Helicopter Textron, Inc.,
   160 S.W.3d 191 (Tex. App. 2005) ................................................................................ 13

In the Matter of Arbitration Between Trans Chem. Ltd. and China
   Nat. Machinery Import & Export Corp.,978 F.Supp. 266 (S.D.Tex.1997) .............................. 7

In re Argyll Equities, LLC,
   227 S.W.3d 268 (Tex. App. 2007) .................................................................................. 9

In re Market Response Group, Inc.,
   20 B.R. 151 (E.D. Mich. Bankr. 1982) ........................................................................... 5

In re R3 Aerospace, Inc. v. Marshall of Cambridge Aerospace, Ltd.,
   927 F.Supp. 121 (S.D.N.Y. 1996) .................................................................................. 5

In re Rapid Settlements,
   No. 14-06-00698-cv, 2007 WL 925698 (Tex. App., Mar. 29, 2007) .......................... 12

Lakedreams v. Taylor,
   932 F.2d 1103 (5th Cir. 1991) .................................................................................. 6, 12

Lavigne v. Holder,
   186 S.W.3d 625 (Tex. App. 2006) ................................................................................ 13

Louis Schlesinger Co. v. Kresge Foundation,
   236 F.Supp. 373 (D.N.J. 1964) ....................................................................................... 8

Magna v. Platzer Shipyard, Inc.,
    74 F.R.D. 61 (D.C. Tex. 1977)............................................................................... 5

Martin v. Linen Systems for Hospitals, Inc.,
    671 S.W.2d 706 (Tex. App. 1984) ...................................................................... 12

McKenzie Contruction, Inc. v. Maynard,
    758 F.2d 97 (3d Cir. 1985)..................................................................................... 4

Menna v. Romero,
    48 S.W.3d 247 (Tex. App. 2001) ........................................................................ 13

Montes v. Ranson,
    219 Fed.Appx. 378 (5th Cir. 2007) ....................................................................... 4

Nexstar Broadcasting Group, Inc. v. Lammers,
    No. 3:08-CV-0953, 2008 WL 2620098 (N.D.Tex. June 27, 2008)......................... 6

Noble Shipping, Inc. v. Euro-Maritime Chartering, Ltd.,
    No. 03-CV-6039-DLC, 2003 WL 23021974 (S.D.N.Y. Dec. 24, 2003)................. 8

Oramulu v. Washington Mutual Bank,
    No. 08-CV-0277, 2009 WL 1444126 (S.D.Tex. May 22, 2009) ............................ 4

Pete v. United Mine Workers et al.,
    517 F.2d 1275 (D.C. Cir. 1975) ............................................................................. 4

S.R.S. World Wheels, Inc. v. Enlow,
    946 S.W.2d 574 (Tex. App. 1997) ........................................................................ 9

Sharman v. Schuble,
    846 S.W.2d 574 (Tex. App. 1993) ........................................................................ 9

Spilker v. Hankin,
    188 F.2d 35 (D.C. Cir. 1951) ................................................................................ 5

U.S. v. Monnat,
    853 F.Supp. 1301 (D. Kansas 1994)...................................................................... 5

**CODES & STATUTES**

Federal Arbitration Act ("FAA") §10. ................................................................................. 7, 8

Texas Civil Practice and Remedies Code ("CPRC") § 61.001........................................................ 9

CPRC § 171.023................................................................................................................. 11

Texas General Arbitration Act ("TAA") § 171.088................................................................. 7,8

Tex.R.Civ.P.592a ................................................................................................................ 9

Plaintiffs Waguih Siag, individually and as representative of Touristic Investment and Hotels Management Company (SIAG) ("Touristic Investment"), and SIAG-TABA Company (together with Touristic Investment, "SIAG," and the three collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Further Support of Plaintiffs' Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("Reply" in support of "Emergency Motion").[1]  For the reasons set forth below, the Court should grant Plaintiffs' Emergency Motion in its entirety.

## PRELIMINARY STATEMENT

By way of Emergency Motion, Plaintiffs seek a TRO and preliminary injunction enjoining King & Spalding LLP ("King & Spalding") and Reginald R. Smith (collectively, "Defendants") from (i) proceeding with the currently pending arbitration before the London Court of International Arbitration ("LCIA"), (ii) enforcing the March 30, 2010 LCIA so-called Interim Order ("LCIA Order and Award"), and (iii) contacting Plaintiffs' current and prospective business partners and associates regarding the LCIA Order and Award.  In connection with the Emergency Motion, Plaintiffs filed an Application to Vacate the LCIA Order and Award and for a Stay of the LCIA Arbitration ("Application") pending this Court's decision on the parties'

---

[1] Despite having nearly one week to file their response and opposition to the Emergency Motion, Defendants waited until the evening before the hearing on the Emergency Motion before filing a twenty-nine (29) page brief ("Response") with 43 attached exhibits -- even though they knew Plaintiffs' New York counsel would be travelling to Houston that same evening for the hearing. Notwithstanding this blatant gamesmanship, Plaintiffs have endeavored to promptly file this Reply to assist the Court in evaluating the primary issues relevant to the Emergency Motion, but reserve the right to request leave of this Court to file a comprehensive supplemental Reply prior to the hearing on the requested preliminary injunction.

respective pending motions to Remand and Compel Arbitration.[2] To be clear, the relief sought under the Application is separate from that requested in the Emergency Motion.

    First, Defendants have failed to file a sworn affidavit in support of the assertions in their Response, or in opposition to the Affidavit of Movant Waguih Siag, sworn to on June 7, 2010 ("Siag Aff."). Instead, Defendants offer unsworn allegations in their Response from attorneys with no personal knowledge of the underlying facts. Not surprisingly, as these same attorneys continue this litigation the unsworn facts they assert shift as necessary to support their arguments. For example, Defendants advised Plaintiffs that they were entitled to, and were seeking, an 80% contingency fee in connection with the $80 million settlement between SIAG and the Arab Republic of Egypt ("Egypt"). Indeed, Defendants sought and obtained in the LCIA Arbitration an attachment equivalent to their demanded 80% contingency fee, and a complete restraint on 100% of the Egypt settlement proceeds. See Siag Aff. at ¶ 29, Ex. 2 at pp. 6-7 (LCIA Order and Award). Then just six (6) weeks ago, in an attempt to soften their indefensible claim, Defendants represented to this Court that they were in fact only seeking 37.5% contingency fee. See Dkt. 30 in Case No. 4:10-CV-367, Defendants' Response to Plaintiffs' Motion to Strike Defendants' Supplemental Brief in Support of Its Motion to Compel Arbitration, at p. 3. Again, no sworn statement was submitted to support this assertion. Now, in their instant Response, Defendants state that "[i]n the fee dispute currently between the parties before the LCIA, King & Spalding seeks a contingency fee of 45%." See Response at p. 3. They offer no reason -- sworn or unsworn -- as to why their claimed contingency fee has again shifted. What is certain is Defendants' actions before the LCIA and the LCIA Order and Award

---

[2] The procedural history regarding the Emergency Motion and Application -- which originated in the Judicial District Courts of Harris County, Texas, -- is provided in Plaintiffs' Memorandum of Law in Support of the Emergency Motion and Application ("Memo of Law") at pp. 1-6.

itself evidence their continued claim to an 80% contingency fee from Plaintiffs. At bottom, no unsworn fact asserted by Defendants is trustworthy, and all such assertions should be discredited by the Court.[3]

Second, notwithstanding Defendants' assertion that the Federal Arbitration Act ("FAA") and Convention on the Enforcement and Recognition of Foreign Arbitral Award ("Convention") provide the standard by which the Emergency Motion must be evaluated, and not the Texas General Arbitration Act ("TAA"), the standards under both the FAA and TAA are nearly identical, and Plaintiffs easily meet the requirements under both for issuance of the requested TRO and preliminary injunction. In any event, Plaintiffs do not agree that the Convention or the FAA apply for the reasons set forth in their Memorandum of Law in Support of their Cross-Motion to Remand and in Opposition to Defendants' Motion to Compel Arbitration ("Remand Memo"). In essence, the underlying relationship between the parties does not constitute a commercial relationship as required by the Convention and FAA necessary to confer federal jurisdiction (or the FAA's and Convention's respective applicability), but instead is a relationship between attorney and client that is considered as a matter of law to be "more than" fiduciary in nature, and not commercial. See Remand Memo at p. 14-17; Pete v. United Mine Workers et al., 517 F.2d 1275, 1291 (D.C. Cir. 1975) ("[f]ee contracts between attorney and client are a subject of special interest and concern to the courts. They are not to be enforced upon the same basis as ordinary commercial contracts."); McKenzie Contruction, Inc. v. Maynard, 758

---

[3] Indeed, the exhibits filed by Defendants with their Response are not even attached to an attorney affidavit swearing to their authenticity, completeness, or correctness. As such, any such exhibits that are not already a matter of Court record should also be discredited. See Oramulu v. Washington Mutual Bank, No. 08-CV-0277, 2009 WL 1444126 at *7, n. 8 (S.D.Tex. May 22, 2009) (striking exhibits because they were not supported by an affidavit authenticating the documents); Montes v. Ranson, 219 Fed.Appx. 378, 380 (5th Cir. 2007) (holding that unauthenticated documents are not competent evidence).

F.2d 97, 101 (3d Cir. 1985) (same); <u>Dunn v. H.K. Porter Co., Inc.</u>, 602 F.2d 1105, 1108 (3d Cir. 1979) (same); <u>U.S. v. Monnat</u>, 853 F.Supp. 1301, 1303 (D. Kansas 1994) ("an "attorney is not expected to confer with a client as in a commercial venture. The client's role is more than that; indeed, it is more than even a fiduciary relationship in its highest mode.  It is a relationship different from any other in our society, save for the confessor or physician.  In the court's view, it is a sacred trust and should not be intruded in.  In this regard, it seems that lawyers, unlike any others, are duty-bound to preserve that trust, as they, unlike others, are bound by canons of ethics geared to preservation of that trust."); <u>Magna v. Platzer Shipyard, Inc.</u>, 74 F.R.D. 61, 73 (D.C. Tex. 1977) (attorneys' fees agreements of special interest and concern to Courts and not enforceable upon the same basis as commercial contracts); <u>Spilker v. Hankin</u>, 188 F.2d 35, 39 (D.C. Cir. 1951)(same); <u>In re Market Response Group, Inc.</u>, 20 B.R. 151, 152 (E.D. Mich. Bankr. 1982) ("The rights and duties arising out of the relationship of attorney and client are not measured by the yardstick of commercial or trade transactions.") (citation omitted); <u>In re R3 Aerospace, Inc. v. Marshall of Cambridge Aerospace, Ltd.</u>, 927 F.Supp. 121, 123 (S.D.N.Y. 1996) ("[t]he Convention governs only disputes that are 'commercial' in nature.  The dispute . . . can not [sic] be 'considered as commercial' because the state court proceeding concerns the application and enforcement of the Code of Professional Responsibility and Disciplinary Rules.").

  Finally, for the same reasons that establish Plaintiffs' irreparable harm -- Defendants' aggressive attempts to enforce the LCIA Order and Award including their tortious interference with Plaintiffs' current and prospective business relations and the fast approaching LCIA hearing set to determine its own jurisdiction -- sufficient exigent circumstances exist to justify the

issuance of the requested TRO pending the Court's decision on the Application and the parties' respective pending Motions to Remand and Compel Arbitration.

## ARGUMENT

### I

### PLAINTIFFS ARE ENTITLED TO A TRO AND PRELIMINARY INJUNCTION

To establish their right to the requested TRO and preliminary injunctive relief under federal law, Plaintiffs must show (i) a substantial likelihood that they will prevail on the merits, (ii) a substantial threat that they will suffer irreparable injury if the injunctive relief is not granted, (iii) that the threatened injury to Plaintiffs outweighs the threatened harm that the injunction may do to Defendants, and (iv) that granting the preliminary injunctive relief will not disserve the public interest. See City of Meridian v. Algernon Blair, Inc., 721 F.2d 525, 527 (5th Cir. 1983); see also Houston Pipe Line Co. v. O'Connor & Hewitt, Ltd., 269 S.W.3d 90, 96 (Tex. App. 2008) ( "To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim."). "To satisfy this element of substantial likelihood of success, [plaintiff] need not prove its case with absolute certainty." Nexstar Broadcasting Group, Inc. v. Lammers, Case No. 3:08-CV-0953, 2008 WL 2620098 at *4 (N.D.Tex. June 27, 2008); see also Lakedreams v. Taylor, 932 F.2d 1103, 1109 n. 11 (5th Cir. 1991) ("In a preliminary injunction context, the movant need not prove his case"); Casarez v. Val Verde County, 957 F.Supp. 847, 858 (W.D.Tex. 1997) ("A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief").

### A. The Standards for Assessing the Likelihood of Success are the Same Under the TAA or Convention/FAA.

It is undisputed that the arbitration agreement contained in the parties Contract of Representation ("Contingency Fee Contract") and the LCIA Order and Award at issue here are governed by Texas Law. See Application, Ex. 1 at p. 5. Moreover, for the reason provided in the Remand Memo, neither the Convention nor the FAA are applicable. See id. at pp. 14-17. In any event, whether or not the TAA or FAA/Convention should be applied in determining the requested TRO and preliminary injunction is of no moment here because their respective standards on likelihood of success on the merits and irreparable harm are nearly identical and Plaintiffs easily meet them. See In the Matter of Arbitration Between Trans Chem. Ltd. and China Nat. Machinery Import & Export Corp., 978 F.Supp. 266, 303 & n. 157 (S.D.Tex.1997) ("The TGAA's vacatur provision . . . is 'substantially similar to section 10 of the Federal Arbitration Act.'") (citation omitted).

Whether Plaintiffs are likely to succeed on their Application to Vacate the LCIA Order and Award is the issue here. Section 171.088 of the TAA and Sec. 10 of the FAA set forth the grounds for vacating an arbitral award. Whether assessed under the FAA or TAA, an arbitral award may be vacated where (i) the arbitrator exceeded his powers, (ii) the arbitrator refused to postpone the hearing upon a showing of sufficient cause, (iii) the arbitrator demonstrated evident partiality, or (iv) where there is no valid arbitration agreement.[4] Compare TAA Section 171.088 with FAA Sec. 10. Thus, Plaintiffs' arguments regarding likelihood of success apply with equal

---

[4] Although the final bases to vacate is not expressly set forth in the Convention/FAA, it is clear that an arbitrator would exceed his powers (the first ground set forth above) in making an award where the dispute was not arbitrable because there would be no arbitration agreement to confer jurisdiction.

force even if they are assessed pursuant to the FAA/Convention standards.  See Memo of Law at pp. 10-29.

**B.    Movants Have Demonstrated a Likelihood of Success on the Merits.**

Plaintiffs need only show a likelihood of success on one of the foregoing grounds for vacating an arbitral award or order for its Application to be likely to succeed.  See TAA Sec. 171.088, FAA Sec. 10 (providing disjunctive ("or") not conjunctive ("and") for applicable ground to vacate).

**1.    LCIA Arbitrator Steven Gee Exceeded His Powers**

Defendants conclusorily assert that the Rules of the LCIA empowered Arbitrator Gee to issue the LCIA Order and Award and the attachment, restraint and payment provisions therein.[5]  See Response at pp. 20-24.  They make no effort to refute that the remedy of attachment is substantive -- not procedural -- and therefore governed by Texas law.  See Louis Schlesinger Co. v. Kresge Foundation, 236 F.Supp. 373, 377 (D.N.J. 1964) (noting "substantive nature of the remedy of attachment"); Noble Shipping, Inc. v. Euro-Maritime Chartering, Ltd., No. 03-CV-6039-DLC, 2003 WL 23021974 at *2 (S.D.N.Y. Dec. 24, 2003) (attachment "inextricably linked" to plaintiff's substantive rights).

.  Accordingly, Mr. Gee should have applied Texas law and evaluated Defendants' likelihood of success on the merits of their claims before the LCIA, among other requirements (such as posting a bond), before issuing the LCIA Order and Award.  See Emergency Motion at pp. 12-16.  Specifically, Mr. Gee should have consider the strict Texas requirements for granting

---

[5] Defendants suggest that the required first class bank draft for $60 million to be paid to them by Plaintiffs under the LCIA Order and Award cannot be liquidated by them until they have a final award. See Response at p. 13.  However, no such restriction exists in the LCIA Order and Award and Defendants to date have been unwilling to warrant they will not enforce the LCIA Order and Award and refrain from drawing on the bank draft.

the substantive remedy of attachment, including that "(1) the defendant is justly debted to the plaintiff; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; *and* (4) specific grounds for the writ exist under Section 61.002." See Texas Civil Practice and Remedies Code ("CPRC") § 61.001.

Moreover, under Texas law, attachment is not available where an applicant's claims are for unliquidated damages. See S.R.S. World Wheels, Inc. v. Enlow, 946 S.W.2d 574, 575 (Tex. App. 1997) (citing 21 Turtle Creek Sq., Ltd. v. New York State Teachers' Retirement Sys., 425 F.2d 1366, 1368-69 (5th Cir.), modified on other grounds, 432 F.2d 64 (5th Cir. 1970), cert. denied, 401 U.S. 955, 91 S.Ct. 975, 28 L.Ed.2d 239 (1971) ("The longstanding rule in Texas has been that the writ of attachment will not issue in a suit for unliquidated damages")); Sharman v. Schuble, 846 S.W.2d 574, 576 (Tex. App. 1993) ("A writ of attachment is generally unavailable in claims for unliquidated debts"). As stated above, Defendants have claimed entitlement to a contingency fee that has fluctuated from 37.5% to 45% to 80% ostensibly depending upon a formula for calculation provided in the Contingency Fee Contract. Here, where alleged damages are so uncertain and speculative, attachment is unavailable.

Finally, the $60 million attachment and security awarded by Mr. Gee was done so without first requiring Defendants to post a bond. See In re Argyll Equities, LLC, 227 S.W.3d 268, 270 n. 5 (Tex. App. 2007) (citing Tex.R.Civ.P. 592a) (requiring a bind before issuance of security or attachment). No bond was required nor posted by Defendants.

Since Mr. Gee exceeded his powers in issuing the LCIA Order and Award without application of Texas law, Plaintiffs have demonstrated that the Application is likely to succeed on the merits.

### 2. Mr. Gee Unreasonably Refused to Postpone the Hearing Despite a Showing of Sufficient Cause.

Despite being made aware of this Court's pending decisions on the parties' respective Motions to Remand and to Compel Arbitration -- which necessarily would determine the LCIA's jurisdiction -- and Plaintiffs' objections to the LCIA's jurisdiction, Mr. Gee refused to postpone the hearing to determine Defendants' motion for the relief provided in the LCIA Order and Award. See Siag Aff. ¶¶ 27,-28, Ex. G. Moreover, contrary to Defendants' assertions that Plaintiffs could have appeared at the hearing, Plaintiffs refusal to do so was done at the advice of English counsel who opined that such an appearance could waive their objection under English law. See Response at p. 17.

Ignoring Plaintiffs' assertion that it would not chance such a waiver, Mr. Gee curtly ordered that the hearing would not be postponed and failed to provide any basis -- reasonable or unreasonable -- for his decision. Of course, this Court's pending decisions on the parties' Motions to Remand and Compel Arbitration were more than enough reason to postpone the hearing.

### 3. Mr. Gee Demonstrated Evident Partiality.

Defendants implicitly admit that the relationship between them and the LCIA constitutes a fundamental conflict sufficient to demonstrate evident partiality, but suggest that it is not the level of conflict necessary to vacate an arbitral award. See Response at pp. 12-13. However, none of the cases Defendants cite involve such salient conflicts as those present here. No cited case involved a law firm that was a party arbitrating before an arbitral body in which one of its partners was a member and no cited case involved an arbitral body whose President was involved in contentious litigation with a party to the arbitration, where the subject of that litigation was the very case in arbitration.

-10-

In any event, even an appearance of impropriety with respect to the relationship between the LCIA and Defendants, in light of the conflicts between the LCIA and Plaintiffs (including the conflict with the LCIA President Jan Paulsson, Esq. ), see Memo of Law at pp. 18-21, should have been sufficient for Mr. Gee to recuse himself and postpone the hearing. He did not. Instead, he ignored this Court's pending decisions, ignored Plaintiffs' request to postpone the hearing, held the hearing and ruled against Plaintiffs *in absentia*, and granted all the relief requested by Defendants without applying Texas law. See Siag Aff. at ¶¶ 27-30. Mr. Gee's extraordinary efforts on behalf of Defendants in this regard evidence his partiality in their favor.

### 4. There is No Valid Agreement to Arbitrate.

Defendants fail to address the lack of a valid agreement to arbitrate as a basis for vacating the arbitral award. See Memo of Law at pp. 17-29. For this reason alone, Plaintiffs are likely to succeed on the merits of their Application to Vacate the LCIA Order and Award.[6]

### C. Plaintiffs Have Sufficiently Demonstrated Irreparable Harm At This Stage Of The Proceedings.

Unless the Court grants Plaintiffs' requested TRO and Preliminary Injunction, Plaintiffs will continue to face imminent threats to their business and property posed by (i) an unnecessarily expedited foreign arbitral process in which their rights will be adjudicated but in which they cannot appear to vindicate themselves for fear of waiving their objections to the LCIA's jurisdiction, (ii) the destruction of their reputations and business relationships at the hands of Respondents, who are using the LCIA Oder and Award to interfere with Plaintiffs' current and prospective business relationships and threatening such relationships with legal

---

[6] The absence of a valid arbitration agreement also provides a basis for staying the LCIA arbitration, which relief Plaintiffs have requested in connection with the Application. See Memo of law at pp. 41-43; CPRC § 171.023 ( "[a] court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate.").

entanglements, and (iii) the risk that their rights will not be adjudicated under Texas law, which they expressly contracted for in the Contingency Fee Contract, and that the pending motions in this Court along with Texas jurisdiction will be moot, because the LCIA Arbitration will effectively decide the issue of jurisdiction and thereby undermine the power of the Texas Courts. See Memo of Law at pp. 32-33; Siag Aff. ¶ 39.

Defendants have offered no sworn testimony or evidence in opposition to Mr. Siag's Affidavit detailing Defendants' acts that have harmed and will continue to harm Plaintiffs' business unless the requested TRO and injunctive relief is granted. See Siag Aff at ¶ 39. At this stage of the proceedings such un-rebutted testimony is sufficient to establish irreparable harm. See Lakedreams v. Taylor, 932 F.2d at 1109 n. 11 (5th Cir. 1991) ("In a preliminary injunction context, the movant need not prove his case").

Moreover, Defendants ignore the authority cited by Plaintiffs establishing that the aforementioned harms constitute irreparable harm as a matter of law. See, e.g., Houston Pipe Line Company, 269 S.W.3d at 95 (finding irreparable injury and issuing Temporary Injunction, where defendants intended to proceed with arbitration in another forum, thereby altering the status quo and destroying jurisdiction of Texas Court); In re Rapid Settlements, No. 14-06-00698-cv, 2007 WL 925698 at *2 (Tex. App., Mar. 29, 2007) (granting Temporary Restraining Order and injunctive relief restraining arbitration, where (i) motion to compel arbitration pending but not decided, (ii) party seeking to compel arbitration had begun proceedings before friendly arbitrator whom movant "had allegedly used several times in the past," and (iii) "arbitrator promptly issued an order finding that he had jurisdiction over [the parties and settlement funds]"); Martin v. Linen Systems for Hospitals, Inc., 671 S.W.2d 706, 710 (Tex. App. 1984) (harm to reputation constitutes irreparable harm, since "dollar value cannot easily be assigned to

a company's loss of clientele, goodwill, . . . office stability, etc."); Lavigne v. Holder, 186 S.W.3d 625, 629 (Tex. App. 2006) ("[d]isruption to a business can be irreparable harm"); Menna v. Romero, 48 S.W.3d 247, 253 (Tex. App. 2001) (finding "imminent, irreparable harm in the potential loss of business, good will, income, and reputation if the conduct in evidence were not restrained"); IAC, Ltd. v. Bell Helicopter Textron, Inc., 160 S.W.3d 191, 200 (Tex. App. 2005) ("[l]oss of business goodwill or loss that is not easily calculated in pecuniary terms is sufficient to show irreparable injury for purposes of obtaining a temporary injunction").  In light of this un-rebutted authority, Defendants' argument that a Court ordered restraint on its ability to tortiously interfere with Plaintiffs' business relations would be an absolute and "unconstitutional prior restraint on free speech" is simply ludicrous.

The only other defense Defendants can muster in response to the proffered irreparable harm is that the hearing scheduled by the LCIA to determine its own jurisdiction -- which will effectively eviscerate this Court's jurisdiction in regard to the parties' pending Motions to Remand and Compel Arbitration -- is not "imminent."  See Response at pp. 19-20.  Defendants' assertion is disingenuous at best.  Mr. Gee set his jurisdiction hearing for a day between June 21 and July 9, 2010.  See Response at p. 19  The parties are in the midst of that period now.  Plaintiffs asked Defendants on multiple occasions to agree to refrain from participating in Mr. Gee's jurisdiction hearing pending a decision on its Emergency Motion and the pending decision of this Court of the Motions to Remand and Compel Arbitration.  Defendants ignored Plaintiffs' requests.  If Defendants truly believed that the hearing was not imminent they would not refuse to agree to its postponement, and Plaintiffs would not have had to make the instant application.

**D.      Defendants Will Suffer No Harm If The TRO Is Granted.**

Without providing any details, or a sworn affidavit asserting harm, Defendants state that they will be harmed if Plaintiffs' TRO and preliminary injunction is granted.  See Response at p. 10.  It is difficult to comprehend what harm would befall Defendants that would exceed the harm to Plaintiffs' business if Defendants are not restrained from enforcing the LCIA Order and Award, tortuously interfering with Plaintiffs' business, and proceeding with the LCIA arbitration.  Certainly, defendants provide no clue as what that harm could be.

Plaintiffs here seek to maintain the *status quo* pending a decision on its Application and the parties' other motions before the Court.  The issuance of the requested TRO and preliminary injunction will maintain the *status quo*.

**E.      Granting the Request Relief Will Not Disserve the Public Interest.**

No public interest is advanced by allowing the LCIA Arbitration to proceed without the benefit of a ruling on its jurisdiction by a United States Court.  Certainly, granting the Emergency Motion and requested TRO until such a decision was made could not disserve the public interest.  Defendants provide nor reason for their conclusory assertion that granting Plaintiffs' requested relief in and of itself will disserve the public interest.  See Response at p. 10.  On the other hand, there is a substantial public interest in the Court's enforcement of Texas ethical rules and the elimination of unethical contingency fees, such as the one sought by Defendants here.  If anything, granting Plaintiffs' requested relief will foster this important public policy.

## CONCLUSION

For all the reasons herein, Plaintiffs respectfully request that the Court grant their Emergency Motion for a TRO and preliminary injunction and such other relief as the Court deems just and proper.

Dated:  Houston, Texas
       June 23, 2010

Respectfully submitted,

DOHERTY ◻ WAGNER

/s/ Brett Wagner
BRETT WAGNER - SBN: 20654270
Southern District I.D. No. 59875
13810 Champion Forest Drive Suite 225
Houston, Texas 77069
281-583-8700
281-583-8701-Fax

MISHCON DE REYA NEW YORK LLP
James J. McGuire  (admitted *pro hac vice*)
200 Park Avenue, 44th Floor
New York, New York 10016
212-612-3270
212-612-3297-Fax

Of Counsel:

MARK W. LONG & ASSOCIATES
Mark W. Long - SBN: 129214950
Southern District I.D. No. 8816
101 West 6th Street Suite 720
Austin, Texas 78701
512-329-5005
512-322-2096-Fax

*Attorneys for Plaintiffs*
*Waguih Siag, Individually, and as Representative of Touristic Investment & Hotels Management Company (SIAG) and SIAG-TABA Company*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of June 2010, a copy of Plaintiffs' MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION  was sent via e-mail to the following counsel of record:

>Robin C. Gibbs
>Scott A. Humphries
>Jeffrey C. Kubin
>Anthony N. Kaim
>Gibbs & Bruns, L.L.P.
>1100 Louisiana, Suite 5300
>Houston, Texas   77002


>/s/ Brett Wagner
>BRETT WAGNER